# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY KINMAN, JR., | ) 1:06cv1626 DLB |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Roy Kinman, Jr., ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his application on March 21, 2005, alleging disability since February 10, 2005, due to lymphoma, neck problems and panic attacks. AR 66-68, 78-84. After an initial

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On June 12, 2007, the Honorable Anthony W. Ishii reassigned the case to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

denial, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 57-62, 63. On March 14, 2006, ALJ Acevedo-Torres held a hearing. AR 230-242. ALJ Acevedo-Torres denied benefits on April 11, 2006. AR 40-50. The Appeals Council denied review on October 6, 2006. AR 6-9.

Hearing Testimony

ALJ Acevedo-Torres held a hearing on March 14, 2006. Plaintiff appeared with his attorney, Roman Ortega. AR 230.

Plaintiff testified that he was 60 years old at the time of the hearing. He completed the eleventh grade. He last worked in February 2005, as an aircraft installer, where he installed parts on "tire drones." He stopped working mostly because of the pain from the disc in his neck. AR 233. Plaintiff had surgery in 1992 to fuse two discs and his doctor has not recommended more surgery. AR 234. He currently takes five medications for high blood pressure, cholesterol, anxiety and pain. He gets little relief from pain medication and is only taking Tylenol now because Darvocet, Vicodin and other medications that he's tried in the past upset his stomach and didn't help with the pain much. AR 234-235.

Plaintiff estimated that he could walk for 10 to 15 minutes before needing to sit down and could stand for about 15 minutes. He thought he could lift about 10 pounds, at most. AR 235. During a typical day, he gets up and showers and sometimes cooks breakfast. He sits down for a while and then gets up and takes a little walk. He usually takes the dogs for a 15 minute walk in the morning, but when he returns, he has to rest his head in a position where the weight is not on his shoulders. AR 235-236. He does not do any laundry or housework, but can cook something that does not take more than 15 minutes. AR 236. Plaintiff doesn't read much but watches television. He lives with his wife. AR 236.

When questioned by his attorney, Plaintiff explained that he worked at his last job for 21 years and would have continued working if he could. AR 237. Plaintiff also explained that he filed a complaint against the consultive examiner because "it was so quick" and because the doctor questioned whether Plaintiff still had lymphoma. AR 238. Since the surgery to remove the lower lobe of his left lung, Plaintiff gets claustrophobic, nervous and out of breath quickly.

He estimated that he would walk for about 10 minutes before having shortness of breath. AR 239-240. Although sitting is his most comfortable position, his shoulders, neck, lower back and right leg ache. AR 240.

<u>Medical Record</u>

On March 25, 2004, Plaintiff underwent a CT scan of his chest. The scan showed post-lymphomatous changes in the chest and no interval change over September 12, 2003. AR 120.

Plaintiff underwent a CT scan of his abdomen on February 21, 2005. The scan was stable. AR 115.

Plaintiff began treating with Ashim Arora, M.D., on March 24, 2005. He complained of difficulty breathing, a chronic cough, fatigue and snoring. AR 159. His examination was essentially normal. Dr. Arora ordered numerous tests, including a sleep study. AR 159-162.

Plaintiff underwent a pulmonary function test on April 7, 2005. The overall results were essentially normal, except for an indication of mild airways obstruction primarily involving the small airways. This was consistent with Plaintiff's prior history of smoking. AR 165.

On April 25, 2005, Harry S. Menco, M.D., Plaintiff's oncologist, completed a Neoplastic Disease questionnaire. He indicated that Plaintiff had inoperable pulmonary lymphoma but that it was currently "stable by observation." His main symptom is increasing shortness of breath, which began in January 2005. He opined that Plaintiff's prognosis was less than 10 years. AR 174-175.

Plaintiff returned to Dr. Arora on May 6, 2005. Plaintiff complained of shortness of breath upon "answering the door or getting to another room" and a chronic cough. Upon examination, he was in no acute distress and his lungs were clear. He had pain and stiffness in his neck. AR 158.

On May 17, 2005, Plaintiff saw consultive examiner Jagvinder Singh, M.D. Plaintiff complained of lymphoma, degenerative disease in his neck, high blood pressure, high cholesterol and anxiety. Upon physical examination, Plaintiff had no problems walking or getting on and off the examining table. His gait was normal. His lungs were clear. There was no paravertebral spasm, tension or tenderness in his beck or neck. Range of motion was limited in his cervical

spine. Motor strength was 5/5 in all muscle groups with no evidence of any atrophy. Reflexes were 2/4 bilaterally. Dr. Singh diagnosed neck pain, hypertension well controlled with medication, hyperlipidemia, a history of lymphoma, status post left lung surgery in 1998, and a history of anxiety and claustrophobia. AR 176-180.

In assessing his functional limitations, Dr. Singh noted that Plaintiff had slight limitation in movement of his cervical spine. He also stated that Plaintiff "insists that he has lymphoma" but Dr. Singh did not "see any physical signs of it or anything relevant in examination at present." He opined that Plaintiff could stand and walk for about six hours, and could sit without restriction. He could lift and carry 50 pounds occasionally, 25 pounds frequently. He had no further restrictions. AR 180.

On June 1, 2005, a State Agency physician completed a Physical Residual Functional Capacity Assessment form. AR 196. Plaintiff could occasionally lift 50 pounds, 25 pounds frequently. He could stand and/or walk for about six hours in and eight hour day, and could sit for about six hours in an eight hour day. He was limited in pushing/pulling with his upper extremities. Plaintiff had to avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation and hazards. AR 196-202. The physician noted that there was no evidence of recurrent lymphoma and that Dr. Hohl's comment regarding the recurrence was not supported by evidence. AR 202.

Plaintiff saw Mason Hohl, M.D., on June 14, 2005. Plaintiff reported that any activity causes neck, right leg and low back pain, and that he takes an occasional Darvocet and/or Tylenol PM at night. It provides minimal relief, however. Examination revealed very limited cervical range of motion and fairly good lumbar range of motion. Dr. Hohl prescribed Darvocet and recommended "home measures." AR 211.

A June 28, 2005, CT scan of Plaintiff's chest showed an "extensive area of consolidation" in the superior segment of the right lower lobe, which had increased slightly since March 25, 2004, but had not changed significantly since February 21, 2005. AR 112.

On June 29, 2005, Plaintiff underwent an overnight polysomnography split report. The testing revealed severe obstructive sleep apnea and hypopneas. AR 206-207.

On July 19, 2005, Dr. Hohl completed a Spinal Impairment Questionnaire. He indicated that he first treated Plaintiff in 1992 and has seen him once or twice a year. He diagnosed Plaintiff with cervical spondylosis and radiculopathy and indicated that he was status post cervical fusion. His prognosis was poor because he has painful stiffness that would only get worse with time. Dr. Hohl noted that Plaintiff had very limited cervical range of motion and stiffness. He had fairly good lumbar range of motion. He further noted that "x-rays clearly demonstrate cervical spondylosis" and that his last MRI was in 1999. Dr. Hohl explained that Plaintiff had constant pain in his right shoulder and neck area and that his symptoms were reasonably consistent with the physical impairments. AR 104. Dr. Hohl has been unable to completely relieve the pain with medication, without unacceptable side effects. In an eight hour day, Plaintiff could sit for one hour before needing to move around and could stand/walk for one hour before needing to sit or lie down. He could not sit continuously and had to get up every hour, for 10 to 15 minutes. Plaintiff could frequently lift less than 10 pounds, 10 to 20 pounds occasionally, and could frequently carry less than 5 pounds. He could not perform overhead reaching. His pain is frequently severe enough in the morning to interfere with concentration, and constantly severe enough in the evening to interfere with concentration. Dr. Hohl concluded that Plaintiff "really can't work any longer" and that his symptoms were "generally" present for the past 12 years. AR 102-108.

Plaintiff returned to Dr. Menco on August 25, 2005. Plaintiff was diagnosed with a marginal zone lymphoma of the left lower lobe in 1997. He decided against chemotherapy and has generally done well. Over the past few months, Plaintiff began complaining of wheezing and increasing neck pain due to severe osteoarthritis. On examination, there were no neurologic findings, although Plaintiff complained of pain and parathesia in his arms. He had severe and permanent immobility of his neck. Dr. Menco reviewed the recent CT scans and found evidence of bilateral pulmonary abnormalities with a slight increase in the right lower lobe area. He diagnosed "marginal cell lymphoma of the lung with increasing shortness of breath recently, not responding well to therapeutic intervention per Dr. Arora, therefore suspect progressive marginal zone lymphoma, and severe degenerative joint disease of the neck, status post multiple surgeries

leading to disability." Dr. Menco explained that the decision to treat Plaintiff has been "difficult" because he had been stable for the past 7 to 8 years. He opined, though, "that he is progressing currently, even though this is only slight per CT scan." Unless Plaintiff improved with Dr. Arora's treatments, Dr. Menco would consider starting Plaintiff on therapy with drugs such as Rituxan. AR 111.

Plaintiff returned to Dr. Hohl on August 30, 2005, and continued to complain of neck pain, which increased with any walking or sitting. AR 211. Dr. Hohl diagnosed status-post cervical fusion. AR 211.

On September 7, 2005, Dr. Arora completed a Pulmonary Impairment Questionnaire. He first saw Plaintiff on March 24, 2005, and last saw him on August 19, 2005. Dr. Arora indicated that Plaintiff had chronic obstructive pulmonary disease and a slow growing maltoma with gradually worsening symptoms. Clinical findings included shortness of breath, fatigue and coughing. Dr. Arora opined that Plaintiff could sit for four hours in an eight hour day, but had to lay down due to neck pain. He could stand/walk "0-1" hours. Plaintiff could occasionally lift and carry up to 20 pounds. Plaintiff gets anxious when he is short of breath. Plaintiff's symptoms were frequently severe enough to interfere with attention and concentration. He would need to take unscheduled breaks about four times a day, for 20 to 30 minutes a time. He needed to avoid odors, fumes, dust, perfumes, cigarette smoke, gases, soldering fluxes, solvents/cleaners, and chemicals. Dr. Arora believed that these limitations have existed for approximately two years. AR 151-157.

On March 6 and March 10, 2006, Allen Hassan, M.D., completed Multiple Impairment Questionnaires.[3] AR 212-219, 220-224. Dr. Hassan first treated Plaintiff in 1989 for cervical spine problems and most recently saw him on February 15, 2005. He treated Plaintiff approximately once per month. Dr. Hassan listed numerous diagnoses, including marginal cell lymphoma, intraabdominal lymphoma, stable, atherosclerotic cardiovascular disease with renal artery calcification, secondary hypertension, multi-level degenerative disc disease of the cervical

---

[3] One form is handwritten and one form is typed, but the opinions remain the same.

6

spine, and post traumatic stress disorder secondary to health catastrophes.  His prognosis was poor.  For clinical findings, Dr. Hassan listed immobilized cervical spine, positive Lhermitte's test with tingling in the arms, left chest scars, dyspnea, shortness of breath with mild exertion, 50 percent decrease in shoulder abduction, positive straight-leg raising test, and a mini-mental status examination that revealed anxiety, propulsion of speech and depressed affect.  Dr. Hassan cites multiple x-rays of Plaintiff's cervical spine, as well.  He believed that Plaintiff was in constant pain and noted that he has been unable to completely relieve the pain.  Plaintiff could sit for three to four hours a day, and stand/walk for two hours a day.  He could not sit continuously and had to get up and move around every 15 minutes, for 10 minutes.  He could lift/carry 10 pounds occasionally.  Due to Plaintiff's severe spinal cord and foraminal stenosis, numbness and tingling in his arms and hands, Plaintiff was markedly limited in manipulative activities.  Plaintiff would have to take 10 to 15 unscheduled breaks during an eight hour workday, for about 10 to 15 minutes to one hour.  He also has to avoid wetness, noise, fumes, gas, temperature extremes, humidity, dust, and heights.  He could not push, pull, kneel, bend or stoop.  Dr. Hassan believed that these symptoms and limitations began in 1989.  He concluded that Plaintiff as "100% unemployable form a physical standpoint."  AR 220-224.

A CT scan of Plaintiff's chest taken on May 5, 2006, revealed that Plaintiff had a right lower lobe consolidation in his lung for which neoplastic involvement could not be excluded.  The concentration had not significantly changed since June 28, 2005.  AR 228-229.

X-rays dated August 15, 2006, showed mild degenerative changes in the lumbar spine at multiple levels, with no acute abnormality.  AR 227.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of degenerative joint disease of the cervical spine, sleep apnea and status post left lung surgery for lymphoma.  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of medium work.  He could lift, carry, push and pull 50 pounds occasionally and 25 pounds frequently, and could sit, stand and walk without restriction for six to eight hours per day.  AR 44-45.  Due to his history of lymphoma and sleep apnea, the ALJ

determined that Plaintiff had to avoid even moderate exposure to fumes, odors, gases, hazards and machinery. AR 45. Based on this RFC, the ALJ found that Plaintiff could return to his previous work as a structural mechanic and was therefore not disabled. AR 48-49.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (degenerative joint disease of the cervical spine, sleep apnea and status post left lung surgery for lymphoma) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) retains the RFC to perform his past relevant work as a structural mechanic. AR 49.

Plaintiff argues that the ALJ (1) improperly rejected the treating physicians' opinions in favor of the consultive examiner; (2) improperly assessed his credibility; and (3) erred in finding him capable of performing his past relevant work.

**DISCUSSION**

A.   Physicians' Opinions

Plaintiff first argues that the ALJ erred in rejecting the opinions of his treating physicians, Drs. Hohl and Arora, in favor of examining physician Dr. Singh.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.*

---

[4] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

9

(quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician.  "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."'  *Orn,* 495 F.3d at 632; *Murray*, 722 F.2d at 501-502.  "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician' such findings are 'substantial evidence.'" *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985).  Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews*, 53 F.3d at 1041.

If a treating physician's opinion is not giving controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician.  Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician.  20 C.F.R. 404.1527(d)(2)(i)-(ii).  Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements.  20 C.F.R. § 404.1527(d)(3)-(6).   Even when contradicted by an opinion of an examining

physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; *Orn*, 495 F.3d at 632-633. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p; *Orn*, 495 F.3d at 633.

In formulating his RFC, the ALJ gave significant weight to the opinion of Dr. Singh, the consultive examiner, as well as the opinion of the State Agency physician. AR 45-46. Consequently, he rejected the opinions set forth by Drs. Hohl, Arora and Hassan, Plaintiff's treating physicians.

The ALJ first explained why he gave Dr. Singh's findings significant weight. AR 45. As explained above, the ALJ may credit the consultive examiner's findings over those of a treating source "when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician. . .'" *Orn*, 496 F.3d at 632. Dr. Singh performed his own examination of Plaintiff and reviewed "all medical records." AR 176. During his examination, Plaintiff had no problems walking or getting on and off the examining table, and a normal gait. He had clear lungs, and no paravertebral spasm, tension or tenderness in his beck or neck, although range of motion was limited in his cervical spine. Motor strength was 5/5 in all muscle groups with no evidence of any atrophy and reflexes were 2/4 bilaterally. AR 177-179. Based on these findings, Dr. Singh concluded that Plaintiff could perform medium work. His opinion was therefore based on independent findings that differed from those of the treating physicians and can serve as substantial evidence. *See Andrews*, 53 F.3d at 1041.

Plaintiff attempts to discredit the ALJ's decision by explaining that Dr. Singh made "inappropriate and misinformed comments" and "steadfastly refused to accept [his] insistence that his doctors had found a recurrence of his lymphoma in his right lung. . ." Brief, at 17. Indeed, Dr. Singh noted in his findings that Plaintiff has a history of lymphoma and "still insists" that he has lymphoma, but there were no "physical signs of it or anything relevant in examination at present." AR 180. Dr. Singh's diagnoses, however, are not the critical part of his opinion. The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Rather, an impairment must result in significant

limitations prior to a finding of disability. Dr. Singh's opinion as to the current status of Plaintiff's lymphoma, therefore, was irrelevant, given his finding that Plaintiff had no resulting limitations.

While Dr. Singh's opinion was sufficient to constitute substantial evidence in support of the ALJ's RFC finding, the ALJ must nonetheless properly reject the opinions of the treating sources. As to Dr. Hohl's July 2005 opinion setting forth extreme limitations and concluding that Plaintiff "really can't work any longer," the ALJ first explained the record "contains scant medical evidence to support his conclusion." AR 46. A lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). For example, although Dr. Hohl diagnosed Plaintiff with radiculopathy, his neurological examination of Plaintiff was normal. AR 46. Both Dr. Arora and Dr. Singh noted normal neurological examinations, as well. AR 158, 179. Moreover, although there are indications in the record that range of motion in his neck was somewhat limited, Dr. Hohl's restrictions appear out of proportion to the objective findings.

Plaintiff directs the Court to Dr. Hohl's statement that "x-rays clearly demonstrate cervical spondylosis," and suggests that the ALJ should have attempted to "provide the missing data, rather than to assume it does not exist at all." AR 104. However, it is Plaintiff's burden to produce full and complete medical records, not the Commissioner's. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999). Only when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence does the ALJ has a duty to develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001). Here, despite Plaintiff's contention that all treating sources referred to x-rays, the record was not inadequate or ambiguous and the ALJ therefore had no further duty to request information.

As the second reason for rejecting Dr. Hohl's opinion, the ALJ explained that although Dr. Hohl believed Plaintiff to be disabled due to severe pain, he did not refer Plaintiff to a pain management clinic or suggest other "modalities of treatment." AR 46. This, the ALJ believed, was inconsistent with an individual complaining of severe pain. AR 46. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (the need for conservative treatment suggests a lower level of

pain and functional limitation). Indeed, as the ALJ notes, the only medical treatment Dr. Hohl cited was a cervical fusion performed in the 1990s. AR 46-47. Plaintiff continued to work after the fusion, and the ALJ correctly noted that there was no objective evidence that his conditioned had worsened since the time he was able to work. AR 47. For example, despite Dr. Hohl's grim outlook, he notes that the last MRI was performed in 1999. AR 106. *See eg., Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988) (where "condition of [claimant's] back had remained constant for a number of years and her back problem had not prevented her from working over that time," ALJ properly concluded impairment was not disabling).

Plaintiff submits that the ALJ improperly inserted his own medical opinion in his interpretation of Dr. Hohl's lack of treatment. He believes that surgery, followed by a prescription for Darvocet and unspecified "home measures," supports Dr. Hohl's finding. However, despite Plaintiff's belief, the fact remains that Dr. Hohl offered an extremely limiting opinion without supporting evidence. Rather than substituting his own medical opinion, the ALJ was merely comparing the opinion with the underlying evidence, a comparison he is entitled to make. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (treating physician's opinion properly rejected as treatment notes failed to present "the sort of description and recommendations one would expect to accompany a finding that [the claimant] was totally disabled."); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is entitled to draw inferences logically flowing from the evidence). The ALJ therefore set forth specific and legitimate reasons for rejecting Dr. Hohl's opinion.

The ALJ then moved on to analyzing Dr. Arora's September 2005 assessment, in which he opined that Plaintiff's lung condition would essentially preclude work. AR 151-157. The ALJ first explained that although Dr. Arora cited the pulmonary function studies in support of his restrictive limitations, the testing showed only mild airways obstruction. AR 47. Indeed, the overall results were essentially normal, and the mild airways obstruction was consistent with Plaintiff's prior history of smoking. AR 165. Furthermore, although a CT scan in July 2005 revealed an area of consolidation in the right lower lobe, no specific treatment was rendered or recommended. From this, the ALJ concluded that if Plaintiff were suffering from severe

shortness of breath, he would have been receiving more aggressive treatment. AR 47. *Rollins,* 261 F.3d at 856. The objective evidence supports this finding, as CT scans repeatedly showed that Plaintiff's right lung lymphoma was slow growing and stable. AR 112, 120, 228-229.

Plaintiff argues that the ALJ's criticism of the course of treatment was improper and suggests that his treatment was a joint effort between Dr. Arora and Dr. Menco. While this may be so, Plaintiff's own interpretation of the evidence does not negate an otherwise proper ALJ analysis. Specifically, Plaintiff cites Dr. Menco's April 25, 2005, diagnosis of "non-operable lymphoma." Dr. Menco continued, though, that Plaintiff's status was stable by observation. AR 175. In August 2005, Dr. Menco explained that he would consider drug therapy if Plaintiff did not improve with Dr. Arora's treatments. AR 111. There is no record of subsequent treatment and the ALJ was entitled to draw an appropriate inference. Plaintiff again suggests that it was incumbent upon the ALJ to request "clarification" regarding the treatment plan, but there is no indication in the record that Plaintiff's treatment, or lack thereof, was not clearly set forth. The ALJ therefore provided specific and legitimate reasons for rejecting Dr. Arora's opinion.

Based on the above, the ALJ's decision to adopt the consultive examiner's opinion over those of his treating sources was supported by substantial evidence and free of legal error. The Court is mindful of the Ninth Circuit's direction in *Orn v. Astrue, supra*. However, where the treating physicians' opinion are not supported in the first instance, as here, *Orn v. Astrue* is not instructive.

B.   Plaintiff's Credibility

Plaintiff next argues that the ALJ's credibility analysis was flawed.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment," *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.

1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

In his decision, the ALJ explained that he considered Plaintiff's testimony but rejected his reports of extreme functional limitations first based on a lack of evidence in the record. For example, although Plaintiff contends that his neck pain prevents him from working, he has "sought scant medical care for his complaints." AR 48. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ is permitted to consider lack of medical treatment in assessing credibility). His last MRI was in 1999, and while the records of Plaintiff's neck complaints may not be "scant," they simply do not support the extreme limitations he alleges. Plaintiff argues that he "complained to no fewer than five treating physicians about his neck pain and stiffness," but as Defendant states, complaints are not treatment. Opening Brief, at 20. Indeed, the reports relating to Plaintiff's neck consist mainly of subjective complaints.

The ALJ next noted that Plaintiff has not "required emergent treatment for neck pain" and "has been maintained on a conservative medication regime." AR 48. As the ALJ explained, Plaintiff has not been referred "for other modalities of treatment such as a chronic pain program, chiropractic manipulation or physical therapy sessions." The need for conservative treatment suggests a lower level of pain and functional limitation. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). Although there are notations in the record suggesting that Plaintiff's medication was not controlling the pain, they are again based on Plaintiff's subjective reports.

15

The ALJ also explained that objectively, there were no reports of atrophy, a finding common in patients with chronic pain. Plaintiff again asserts that the ALJ improperly offered a medical assessment and suggests that the treating sources did not require such a finding to determine that Plaintiff was disabled. However, rather than offering his own medical opinion, the ALJ made permissible inferences from the record.

Next, the ALJ contrasted Plaintiff's severe allegations with his ability to continue working. AR 48. Plaintiff admits that he was able to work for many years after his surgery, but contends that his "pain and motion limitation simply became too great to continue." Opening Brief, at 19. The ALJ correctly notes that there was no evidence of worsening, and therefore the fact that Plaintiff could work previously suggests that he can continue to do so. AR 48. Moreover, as Defendant points out, the treating sources all indicate that Plaintiff's condition has been the same since 2003, when he was still working.

The ALJ's credibility analysis was sufficiently specific to allow the Court to conclude that he did not arbitrarily reject Plaintiff's claims. The ALJ is responsible for resolving conflicts in the medical evidence, and the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The record simply did not support the Plaintiff's testimony of extreme limitations.

C.  Plaintiff's Past Relevant Work

Finally, Plaintiff contends that the ALJ erred by finding that his past relevant work was free from pulmonary irritants and hazards. At step four, the ALJ found that Plaintiff's RFC, which included a preclusion from having *moderate* exposure to fumes, odors, gases, hazards and machinery, did not preclude his return to his past work as a structural mechanic. AR 48.

The step four determination involves a comparison between the demands of the claimant's former work and his present capacity. *Villa v. Heckler*, 797 F.2d 794, 799 (9th Cir. 1986). It is Plaintiff's burden to demonstrate that he is unable to return to his previous job, and if he is unable to do so, the burden remains with him rather than shifting to Secretary to proceed with step five. *Matthews v. Shalala*, 10 F.3d 678 681 (9th Cir. 1993).

1     Although Plaintiff disagrees with the name of the position, he cites the same Dictionary of Occupational Title ("DOT") section relied upon by the ALJ and the disability analyst- DOT 806.381-026.  Pursuant to this section, the position requires "occasional" exposure to moving machinery and high exposed places.  AR 97.  Exposure to other hazards are "not present."  AR 97.

    In making his argument, Plaintiff mischaracterizes the RFC finding.  The ALJ found that Plaintiff had to avoid "moderate" exposure, not *all* exposure, as he suggests.  Plaintiff does not argue that needing to avoid moderate exposure precludes occasional exposure, but rather bases his argument on an all or nothing approach.  Plaintiff therefore fails to demonstrate why he cannot return to his past work.  In any event, exposure to hazards on an "occasional" basis is not necessarily inconsistent with the ALJ's finding that Plaintiff needed to avoid "moderate" exposure.  Plaintiff's argument is without merit.

## CONCLUSION

    Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Roy Kinman, Jr.

    IT IS SO ORDERED.

    Dated:   **March 11, 2008**            **/s/ Dennis L. Beck**
                                               UNITED STATES MAGISTRATE JUDGE